A03A2386. ACTION SOUND, INC. v. DEPARTMENT OF TRANSPORTATION.
(594 SE2d 773)

MIKELL, Judge.

In this appeal, Action Sound, Inc. contends that the trial court erred by granting the Department of Transportation's motion for new trial and in its jury instruction on damages. We agree with the latter contention. After carefully considering the instruction as a whole, we find that the charge at issue constituted reversible error; we reverse on that ground.

As part of a state highway project, in July 1998, the DOT filed a declaration of taking against 0.1444 acres of land and certain easement rights belonging to Daniel R. Coty, Inc., and others. At the time of the declaration, the DOT's appraiser "estimated that the just and adequate compensation for said parcel, and any consequential damages or benefits considered, is in the amount of $465,650.00." Action Sound, Inc., the lessee of the site, sought to intervene because the condemnation obliterated its existing business, a convenience store/fuel stop operated on the property.

Dissatisfied with the DOT's appraisal, Daniel R. Coty, Inc., appealed that valuation. Daniel R. Coty, Sr., was the sole shareholder of Action Sound, Inc. and Daniel R. Coty, Inc. Coty had bought the property at issue from Shell in 1980, and in 1982, he converted the existing station into a convenience store/fuel stop. There, Coty operated a Shell convenience store until 1989 when he leased the site to Golden Isles Petroleum. Coty "took it back over" from Golden Isles in January 1996, when Golden Isles' five-year lease ended. On February 1, 1996, Daniel R. Coty, Inc., entered a 15-year lease with Action Sound, Inc., as lessee. After undergoing remodeling, the refurbished facility reopened in March 1996.

The condemned property was situated at the interchange of Interstate 95 and U. S. Highway 341. It was undisputed that Action Sound had the only fuel stop at this interchange capable of fueling large trucks, a niche in the market not shared by other facilities and not capable of duplication by Action Sound's competitors. In addition to having an exclusive market for truck diesel at this interchange,

Action Sound was the only retailer of "off road" diesel in Glynn County. At the conclusion of a multi-day trial, the jury awarded damages of $275,000 to Daniel R. Coty, Inc., and $675,000 to Action Sound.

The DOT filed a motion for new trial. The court denied the DOT's motion as to Daniel R. Coty, Inc., but granted a new trial solely as to Action Sound. In the second trial, the DOT and Action Sound again disputed the value of the business prior to and after the taking. They contested the lease's market value, the uniqueness of the site, and the method for calculating lost profits. At the time of the taking, Action Sound's lease required it to pay $4,500 in monthly rent to Daniel R. Coty, Inc. Action Sound placed the true market rent at $6,500 while the DOT's witness testified that the monthly rent of $4,500 was at market, and that the lease could not have been sold at a profit. Relying upon Action Sound's income tax returns for 1996, 1997, and 1998, the DOT argued that the business was marginally, if at all, profitable. Using the annualized net income extrapolated from the tax returns for those three years, the DOT's witness valued the business on the date of taking at $14,725. Action Sound's expert, however, testified that the use of tax returns is not recognized by the oil industry as a proper method of valuing this particular type of business. He testified that the fair market value of the business on the date of taking was between $678,000 and $680,000.

Action Sound offered proof that the condemned property was unique and that the business was completely destroyed. Daniel R. Coty, Jr., who began managing the business in 1997 after graduating from college, testified that the business operated a "state of the art, three-bay diesel facility . . . specially designed for big trucks." Coty Jr. testified that "once I started the accounts [aggressively marketing to local companies] the business went through the roof. It grew every day until the day we were shut down."

His father, Coty Sr., testified that Action Sound was forced out of business on August 31, 1998, because it could no longer operate after losing the use of the underground gasoline storage tanks, the front driveway, and the front pump islands and dispensers and because big trucks could no longer access the diesel aisle. He testified that half of Action Sound's sales derived from commercial diesel fuel sold to local truckers, loggers, construction workers, and construction companies who were either performing work at the nearby mill or were on their way to it by means of Highway 341. He testified that the other half of sales were from interstate traffic. Coty Sr. testified that although he tried to relocate where he could retain his client base, he could not do so because "[r]ight there at the interchange there's nothing available to relocate." Using Action Sound's 1998 net

annualized inside sales of $184,020 combined with an annualized sale of 1,198,246 gallons of fuel, less certain specified costs for payroll, rent, and other expenses, he calculated the fair market value of the business as $725,000. The second jury awarded Action Sound only $81,203.85, resulting in total compensation of nearly $100,000 less than the amount tendered by the DOT, and nearly $500,000 less than the first jury awarded.[1]

1. In its first two enumerations of error, Action Sound contends that the trial court erred in granting the DOT's motion for new trial on the statutory general grounds and on the special grounds.

Although the DOT moved for a new trial on both general and specific grounds, when the trial court granted the motion as to Action Sound only, it did not elaborate on the basis for its decision. The trial court stated merely that it had considered the argument of counsel and "the grounds set forth in the motion for new trial."

In the first grant of a new trial, a trial court has broad discretion.[2] "As required by OCGA § 5-5-50, the first grant of a new trial is not to be reversed by an appellate court unless the verdict set aside by the trial court was absolutely demanded."[3] Although the first jury's verdict of $675,000 may well have been within the range of evidence, we cannot say that the law and facts demanded that verdict.[4] Therefore, we will not disturb the trial court's grant of a new trial.[5]

2. Action Sound contends that it is entitled to a new trial because in the second trial the court erred in its jury charge as to "lost profits." Action Sound asserts that the charge as given was an incorrect statement of law because it equated business loss to loss of business profit. Action Sound points out that the misstatement of the law was repeated four times during the jury charge. Action Sound claims that the trial court compounded the error by mistakenly referring to "business profits" as "business properties."

A request to charge must be apt, adjusted to some principle in the case, authorized by the evidence, and a correct statement of law.[6] In a condemnation case, the dispositive issue is what constitutes "just and adequate" compensation for the value of the property on the date of taking, including consequential damages to a business and

[1] The jury awarded Daniel R. Coty, Inc., $275,000 in the first trial, and in the second trial, the jury awarded $81,203.85 to Action Sound, resulting in total compensation of $366,203.85. The DOT's expert had valued the direct and consequential damages as $465,650.

[2] *Garrett v. Garrett*, 128 Ga. App. 594, 596 (3) (197 SE2d 739) (1973).

[3] (Citation omitted.) *Thomas v. Wiley*, 240 Ga. App. 135, 137 (3) (522 SE2d 714) (1999).

[4] See *Hicks v. American Interstate Ins. Co.*, 158 Ga. App. 220, 225 (1) (279 SE2d 517) (1981).

[5] See *Hopkins v. Brumbelow*, 195 Ga. 388 (24 SE2d 318) (1943).

[6] *Hill v. State*, 259 Ga. 557, 558 (3) (b) (385 SE2d 404) (1989).

expenses for relocation.[7] In *Bowers v. Fulton County*[8] the Supreme Court held: "The destruction of an established business is and must be a separate item of recovery." The Supreme Court noted that the "loss of an established business" does not merely reflect the value of the real estate, "for frequently the value of the business greatly exceeds that of the premises where it is conducted."[9] In a condemnation case involving premises used as a business, the correct measure of damages is the difference between the market value of the business before the property is taken and its market value thereafter.[10]

Here, it is undisputed that Action Sound's leasehold interest and its established business were completely destroyed as a result of the taking. When a business is totally destroyed, business damages may be recovered regardless of whether the business interest has merged with the land ownership or whether the business interest belongs to a separate lessee claimant.[11] Because of the constitutional requirement that a condemnee receive just and adequate compensation for his loss, a lessee is entitled to recover business damages.[12] To recover business losses, it is not necessary that the operator of that business demonstrate that his business was being operated at a profit at that location prior to the condemnation, provided that the loss being claimed is not remote or speculative.[13] "[E]vidence of *any* business losses which result in a diminution of the value of a condemnee's business is admissible."[14]

> The correct measure of damages that a lessee condemnee can recover for damage to his business is the difference in market value of the business prior to and after the taking. Various elements, such as loss of profits, loss of customers, or possibly what might be termed a decrease in the earning capacity of the business, may all be considered in determining the decrease in value of the business, although these factors do not themselves represent separate elements of damage.[15]

---

[7] *Simmons v. Dept. of Transp.*, 225 Ga. App. 572, 575-576 (484 SE2d 332) (1997).

[8] 221 Ga. 731, 739 (2) (146 SE2d 884) (1966).

[9] Id.

[10] See *Timmers Chevrolet v. Dept. of Transp.*, 261 Ga. 270, 271 (1) (404 SE2d 121) (1991).

[11] See *Dept. of Transp. v. Dixie Hwy. Bottle Shop*, 245 Ga. 314, 315 (265 SE2d 10) (1980).

[12] See *State Hwy. Dept. v. Thomas*, 115 Ga. App. 372, 376-377 (1) (154 SE2d 812) (1967), citing *Bowers*, supra.

[13] *Dept. of Transp. v. Hillside Motors*, 192 Ga. App. 637, 642 (5) (385 SE2d 746) (1989).

[14] (Emphasis in original.) *Buck's Svc. Station v. Dept. of Transp.*, 259 Ga. 825, 827 (2) (387 SE2d 877) (1990).

[15] (Footnote omitted.) Hinkel, Georgia Eminent Domain, § 5-14, p. 162 (2000 ed.).

During the charge conference, Action Sound objected to the DOT's Request to Charge No. 20, pointing out that the charge as submitted was an incorrect statement of law because the charge required the jury to use a "reasonable certainty" standard to determine damages and to decide uniqueness and because the charge improperly treated as interchangeable the terms "business loss" and "lost profits." The trial court agreed to eliminate the "reasonable certainty" language and also to delete the phrase "lost profits." Nevertheless, the trial court charged:

> I instruct you that the legal standard applicable to the recovery of *lost profits* in the present case by the Condemnee is as follows. *Special damages, such as business loss or loss of business property*, may be recovered by the Condemnee in the present case only if the property is found to you to be unique, which I have already instructed you on.

> Furthermore, *such special damages can be recovered only if the claimed damages for the business loss or lost profits* are not remote and speculative. In other words, in order for the special damages, such as *loss of business or loss of business property* be recovered, you the Jury must be satisfied by a preponderance of the evidence that the claimed damages were caused directly and proximately by the Condemnor's acquisition and construction in the present case.

> However, Condemnee would not be entitled to such special damages in the event you are not satisfied beyond — I mean, by a preponderance of evidence that the property is unique and the highway acquisition and construction caused the *business loss or loss of business properties* as claimed by the Condemnee, if any is claimed by the Condemnee.

> In addition, with respect to the amount claimed by the Condemnee for *business loss or loss of business properties*, you must be satisfied by a preponderance of the evidence that the property is unique and the amount of damages claimed is not remote, contingent or speculative. Otherwise, Condemnee would not be entitled to the special damages which it claims in this case.

(Emphasis supplied.) After instructing the jury on valuing a leasehold interest, the court added, "but I want to give this law about the business loss, if any, and the measure of damages for the destruction

of business is the difference in market value prior to and after the selling [sic]."[16] Continuing, the trial court stated:

> Separate elements, such as loss of profits, loss of customers, a possibility of what might be termed a decrease in earning capacity of a business, may all be considered in determining the value of the business, although they represent no separate element of the damages.

After the trial court finished instructing the jury, Action Sound again excepted to the charge on damages, stating, "I thought we had agreed that the standard was business loss and that loss of profits is an element of that."

At the hearing on Action Sound's motion for new trial, the DOT disputed the accuracy of the trial transcript where the phrase "loss of business properties" appears instead of "loss of business profits." While counsel for Action Sound conceded that he did not hear the trial court say "business properties" and so did not object to the alteration, he argued that the error constituted such "substantial harm" that under OCGA § 5-5-24, Action Sound was entitled to a new trial.

Regardless of whether the trial court made a slip of the tongue and said "business properties" instead of "business profits," the charge was error. As given, the charge improperly juxtaposed and commingled distinct concepts that are to be considered separately.[17] "[L]ost profits are not the only element to be considered in determining the damages resulting from the total or partial destruction of a business."[18] In a condemnation case, business losses are not limited to lost profits, so if the jury had to choose between awarding damages for lost profits or for business losses, such an election was plainly wrong.[19]

While it is true that jury instructions must be read and considered as a whole in determining error, we reject the DOT's claim that when so considered, "the court's charge is adequate on the issue of loss of business value."[20] On the contrary, the instruction misstated the law, and when considered in the context of the charge as a whole, it rendered the balance of the charge confusing, contradictory, and

---

[16] The pattern charge provides: "[t]he measure of damages for the injury of the business would be the difference in value of the business before and after the taking of the land, or any interest in it, resulting from such taking." Suggested Pattern Jury Instructions, Vol. I: Civil Cases, p. 54.

[17] See *Gunn v. Dept. of Transp.*, 222 Ga. App. 684, 686 (476 SE2d 46) (1996).

[18] *Old South Bottle Shop v. Dept. of Transp.*, 175 Ga. App. 295, 296 (2) (333 SE2d 127) (1985).

[19] See id.

[20] See *Dept. of Transp. v. Hillside Motors*, supra, 192 Ga. App. at 640 (3).

unreconcilable.[21] The error was exacerbated by the fact that Action Sound was not seeking damages for loss of business properties because those damages belonged to the lessor, Daniel R. Coty, Inc. Accordingly, we find that Action Sound is entitled to a new trial.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 13, 2004.

*James P. Fields*, for appellant.
*Thurbert E. Baker*, Attorney General, Smith & Jenkins, *Wilson R. Smith*, for appellee.

---

[21] In the first trial, the court properly instructed the jury on direct and consequential damages and avoided the term "special damages." Consequential damages are damages that arise naturally and proximately to the remainder of the owner's property from the taking of the condemned portion and the use of the property for the purposes for which it is taken. *Butler v. Gwinnett County*, 223 Ga. App. 703, 704 (1) (479 SE2d 11) (1996).